Angela MOSLEY, Respondent/Plaintiff,

v.

MEMBERS OF THE CIVIL SERVICE
BOARD FOR THE CITY OF
BERKELEY, Missouri, Director of
Finance, City Manager, Appel-
lants/Defendant.

No. ED 77135.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 20, 2000.

Motion for Rehearing or Transfer to
Supreme Court Denied July 21, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Donnell Smith, St. Louis, for appellants.

Elbert A. Walton, Jr., St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

The plaintiff, Angela Mosley, filed a petition for judicial review of the termination of her employment with the City of Berkeley ("City"). The Circuit Court of St. Louis County entered judgment in plaintiff's favor; defendants, Members of the Civil Service Board, the Director of Finance, and the City Manager, appealed. We reverse and remand with instructions.

Plaintiff was hired by the City as a Contract Specialist in August, 1998. Her initial employment status was as a probationary employee, as required by Section 3.04(a) of the City's Personnel Rules and Regulations ("Rules"). Plaintiff's employment was terminated on May 20, 1999. Pursuant to section 6.08 of the Rules, plaintiff filed a complaint with the Civil Service Board ("Board") requesting a hearing to review her dismissal. Section 6.08 provides that the dismissal of an employee "shall be subject to review at the volition of the employee on condition that the employee holds a permanent full time position and has completed his initial probationary period." Finding that plaintiff had not completed her probationary period, the Board denied her request for a hearing.

Plaintiff subsequently filed a petition for judicial review of her dismissal under both § 536.140 RSMo (1994),[1] providing for judicial review of an agency decision in a "contested case," and § 536.150, providing for judicial review of an agency decision in a "noncontested case." When defendants failed to file an answer, the circuit court, pursuant to plaintiff's motion, entered an interlocutory order of default on the noncontested case claim. The circuit court ultimately entered judgment in favor of

---

1. All subsequent statutory references are to RSMo (1994) unless otherwise indicated.

plaintiff on the merits of the contested case claim, ordering reinstatement and back pay, among other things. This appeal follows.

■ Initially, we address plaintiff's contention that the judgment is not final, requiring dismissal of this appeal, because the circuit court failed to enter judgment on its interlocutory order of default, thereby leaving that count unresolved. This issue implicates the distinction between "contested cases" and "noncontested cases" under the Missouri Administrative Procedure Act. " 'Contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(2). The term "hearing," as used in § 536.010(2), means a proceeding at which a "measure of procedural formality" is followed. *Hagely v. Board of Educ. of Webster Groves School Dist.*, 841 S.W.2d 663, 668 (Mo.banc 1992). Procedural formalities in contested cases generally include: notice of the issues, § 536.067; oral evidence taken upon oath or affirmation and the cross-examination of witnesses, § 536.070; the making of a record, § 536.070; adherence to evidentiary rules, § 536.070; and written decisions including findings of fact and conclusions of law, § 536.090. *Id.* On the other hand, a noncontested case is one without any requirement of a formal, adversarial hearing of the type required in contested cases. *Id.* at 667.

■ It is true that the circuit court's judgment takes no further action on the interlocutory order of default entered on the noncontested case claim. However, where the disposition of one count and the entry of a general judgment thereon oper-ates to preclude recovery on all other counts, there is a final judgment for purposes of appeal. *Clayton Brokerage Co. of St. Louis, Inc. v. Raleigh*, 679 S.W.2d 376, 378 (Mo.App.1984). We note that the circuit court merely entered an interlocutory *order* of default on the noncontested case claim; it never entered a default *judgment* thereon.[2] Consequently, when the court entered judgment on the contested case claim, it necessarily vacated its order of default on the noncontested case claim and, concomitantly, denied such claim, since contested cases and noncontested cases are mutually exclusive classifications.[3] Accordingly, the trial court's judgment is final and appealable.

■ We next consider the propriety of that judgment. We initially note that if this is, in fact, a contested case, the circuit court should have remanded the matter for a hearing before the Board. *See generally Rugg v. City of Carrollton*, 990 S.W.2d 89 (Mo.App.1999) (affirming the circuit court's judgment remanding a contested case to the agency for a contested hearing). In a noncontested case, the circuit court conducts a *de novo* review of the agency's decision in which it hears evidence on the merits, makes a record, determines the facts, and determines whether the agency's decision is unconstitutional unlawful, arbitrary, capricious, or otherwise involves an abuse of discretion. *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 94–95 (Mo.App.1982); § 536.150.1. In a contested case, the circuit court employs a similar scope of review, *see* § 536.140.2, but such review is not *de novo*. Instead, the court reviews a record already composed by the agency, giving

---

**2.** Rule 74.05 distinguishes between interlocutory orders of default and default judgments. Rule 74.05(b) provides that an interlocutory order of default may be entered against a party against whom a judgment for affirmative relief is sought when that party "has failed to plead or otherwise defend as provided by these rules." Rule 74.05(a) provides that a default judgment may be entered under similar circumstances "upon proof of damages or other entitlement to relief."

**3.** Rule 74.01(b), which expressly grants to the trial court the authority to revise an order entered prior to the entry of a final judgment, also grants the authority to vacate such an order. *Ward v. Hentges*, 844 S.W.2d 471, 473 (Mo.App.1992).

deference to the agency's decision where supported by competent and substantial evidence. *Id.;* § 536.140.2.

 Since the Board denied plaintiff a hearing in the case at bar, there was no record for the circuit court to review. Accordingly, it was error to enter judgment on the merits if, in fact, this is a contested case. We conclude, however, that this is not a contested case. As already explained, the defining characteristic of a contested case is a formal, adversarial hearing as "required by law ." Section 536.010(2). The "law" requiring such a hearing is extraneous to the Missouri Administrative Procedure Act; it may be an ordinance, a statute, or a state or federal constitutional provision. *Cade v. State,* 990 S.W.2d 32, 36 (Mo.App.1999). In the present case, the applicable "law" is the City Rules, section 6.08 of which provides that only full-time employees who have completed their initial probationary period are entitled to a hearing concerning a suspension, demotion, or dismissal. The crucial issue, therefore, is whether plaintiff had completed her probationary period.

The circuit court's judgment states, as one of its findings of fact, "On March 16, 1999, plaintiff received her probationary review, was rated satisfactorily and removed from probation and placed on regular status as an employee of the City of Berkeley." This finding is supported by plaintiff's affidavit containing a statement to the same effect. Although plaintiff's March 16, 1999 probationary review indicates an overall performance rating of "Meets Expectations," it does not specify that she was to be removed from probationary status, nor does any other document in the record. Both sections 3.04(a) and 3.08 of the Rules provide that the probationary period "shall not end" until the employee has received written notification of such. Moreover, section 3.08 of the Rules provides: "The probationary period

for all classified positions *requires* a working test of twelve (12) months' duration . . . (emphasis added)."[4] At the time of her dismissal, plaintiff had worked as a Contract Specialist for only nine to ten months. In light of the mandatory minimum twelve-month probationary period and the absence from the record of any documentation that plaintiff was removed from probationary status, we find the circuit court's conclusion that plaintiff had been removed from probationary status to be unsupported by substantial evidence as well as the result of a misapplication of the law. Consequently, the circuit court erred in treating this matter as a contested case.

 Generally, "[a]n administrative decision that is not a contested case under MAPA is a noncontested decision subject to judicial review pursuant to § 536.150." *Hagely,* 841 S.W.2d at 669. There exists an exception to this rule, however, where at-will employees are involved. Employment is considered to be at-will, that is, terminable for cause or without cause, in the absence of a contract of employment, an ordinance, or a statute conveying a property interest in the employment or providing that the employee can be discharged only for cause. *Luethans v. Washington Univ.,* 838 S.W.2d 117, 120 (Mo.App.1992); *Cooper v. City of Creve Coeur,* 556 S.W.2d 717, 720–21 (Mo.App. 1977). Because at-will employees may lawfully be fired for any reason or for no reason at all, § 536.150 does not authorize judicial review of the termination of at-will employment. *See Barnes v. City of Lawson,* 820 S.W.2d 598, 600–01 (Mo.App. 1991); *Cooper,* 556 S.W.2d at 721. Not having completed the probationary period, and there being no contract of employment, ordinance, or statute giving her a property interest in her employment or providing that she could be discharged only for cause, plaintiff was employed at-will. Accordingly, the determination of *the*

---

4. Section 3.04(a) of the Rules explains that "probationary period" and "working test period" are synonymous.

*adequacy of the grounds* for her dismissal is not subject to judicial review.

There remains an issue, however, as to whether plaintiff's dismissal was procedurally proper. The circuit court found that plaintiff's dismissal was "unlawful" because the City Manager never approved the Director of Finance's dismissal of plaintiff, as required by section 3.09 of the Rules. This matter *is* subject to judicial review under § 536.150.[5]

On appeal from the circuit court's review of a noncontested case, our scope of review is dictated by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Cade*, 990 S.W.2d at 37. That is, we will affirm the circuit court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. We hold that the circuit court's judgment, to the extent it hinges on its finding that plaintiff was dismissed upon improper procedure, is unsupported by substantial evidence. Other than plaintiff's assertions that she was dismissed upon improper procedure, the record is devoid of any evidence to that effect. Conversely, the record contains evidence, in the form of two letters, that plaintiff's dismissal was approved by the City Manager.

The first letter, dated May 20, 1999, was written by Jamell Granberry, one of plaintiff's superiors, to "Phyllis Mitchell, Acting City Manager," recommending immediate termination of plaintiff due to unsatisfactory work performance.[6] As Acting City Manager, Ms. Mitchell possessed the full authority of that office, albeit temporarily, including the authority to approve the dismissal of probationary employees. That she may have been simultaneously performing her permanent duties as Director of Finance is irrelevant.

The second letter, dated July 6, 1999, was written by "Karl Reid, City Manager" to the City Clerk discussing plaintiff's request for a hearing before the Board. In that letter, Mr. Reid explained that plaintiff was still a probationary employee who could be terminated at will and, therefore, had no right to a hearing. Additionally, Mr. Reid referenced plaintiff's December 28, 1999 Performance Evaluation whereby she received a rating of "Unsatisfactory," and noted that such a rating requires immediate termination of probationary employees. This latter statement indicates his approval of plaintiff's dismissal.

As a final matter, we note that plaintiff was not entitled to receive written notice of dismissal, including the reasons therefor, in accordance with section 6.03 of the Rules because that section, as well as all other sections contained in Rule 6.00, do not apply to probationary employees. Sections 6.07 and 6.08 provide that only full-time employees who have completed their initial probationary period are entitled to appeal reprimands and suspensions, demotions, or dismissals, respectively, to the Board. This strongly suggests that the procedures set forth in Rule 6.00 for implementing these disciplinary actions are likewise inapplicable to probationary employees. Moreover, section 3.09 specifically governs the dismissal of probationary employees. Such a provision would be unnecessary if Rule 6.00, and in particular section 6.03, applied to probationary employees.

The judgment of the trial court is reversed and the cause is remanded with instructions to enter judgment in favor of defendants.

---

5. Although the circuit court considered this to be a contested case, it held, in essence, a *de novo* hearing since the Board never conducted a hearing in the first instance. Accordingly, we deem the circuit court to have reviewed this matter as a noncontested case under § 536.150.

6. It is undisputed that Ms. Mitchell: (1) was the individual who dismissed plaintiff; and (2) was plaintiff's Department Head (plaintiff worked in the Finance Department).

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.